**Exhibit "A"**

CONTRACT OF SALE - CONDOMINIUM UNIT (2000)
This form was originally prepared by the Real Property Section of the New York State Bar
Association and the Committee on Real Property Law and the Committee on Cooperative and
Condominium Law of the Association of the Bar of the City of New York. This form may have been
altered by the user and any such alterations may not be apparent. To view or download the original
unaltered text of this form, visit the Real Estate Law page at www.abcny.org.

*Note: This form is intended to deal with matters common to most transactions
involving the sale of a condominium unit. Provisions should be added, altered or
deleted to suit the circumstances of a particular transaction. No representation is
made that this form of contract complies with Section 5-702 of the General
Obligations Law ("Plain Language Law").*

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

### Contract of Sale - Condominium Unit

Agreement made as of July 2, 2014 between PRESTON TAYLOR PROJECTS, LLC
located at 820 Second Avenue, Ste. 7B, New York, N.Y. 10017 ("Seller"), and TOM
SHIMURA located at P.O. BOX 3423 New York NY 10163 ("Purchaser"). *Tomahiko* (with right to assign to an affiliated limited liability company)

1. **Unit:** Seller agrees to sell and convey, and Purchaser agrees to purchase, Unit
No. 7B ("Unit") in the building ("Building") known as Diplomat Condominium
("Condominium") and located at 820 Second Avenue, New York, New York, together
with a 1.2861% percent undivided interest in the Common Elements (as defined in para.
6) appurtenant thereto, all upon and subject to the terms and conditions set forth herein.
The Unit shall be as designated in the Declaration of Condominium Ownership (as the
same may be amended from time to time, the "Declaration") of the Condominium,
recorded in NEW YORK County, New York or the By-Laws (as the same may be
amended from time to time, the "By-Laws") of the Condominium.

2. **Personal Property:** (a) The sale includes all of Seller's right, title and
interest, if any, in and to:

(1) ~~the refrigerators, freezers, ranges, ovens, built-in microwave
ovens, dishwashers, washing machines, clothes dryers,~~ cabinets and counters, lighting
and plumbing fixtures, chandeliers, air conditioning equipment, venetian blinds, shades,
screens, storm windows and other window treatments, wall-to-wall carpeting,
bookshelves, switchplates, door hardware and mirrors, built-ins and articles of property
and fixtures attached to or appurtenant to the Unit, except those listed in subpara. 2(b), all
of which included property and fixtures are represented to be owned by Seller, free and
clear of all liens and encumbrances other than those encumbrances ("Permitted
Exceptions") set forth on Schedule A annexed hereto and made a part hereof (*strike out
inapplicable items*); and

(ii) _not applicable_

(b) Excluded from this sale are:

(i) furniture and furnishings (other than as specifically provided in this Contract); and

(ii) _not applicable_

(c) The property referred to in subpara. 2(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed hereunder.

3. Purchase Price: (a) The purchase price ("Purchase Price") is $1,900,000.00, _One Million Eight Hundred Thousand_  payable as follows: $180,000.⁰⁰    $1,800,000

(i) $190,000.00 ("Downpayment") on the signing of this Contract by good check subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to para. 16; and

(ii) $1,710,000.00 constituting the balance of the Purchase Price, $1,620,000  by certified check of Purchaser or official bank check (except as otherwise provided in this Contract) on the delivery of the deed as hereinafter provided.

(b) All checks in payment of the Purchase Price shall represent United States currency and be drawn on or issued by a bank or trust company authorized to accept deposits in New York State. All checks in payment of the Downpayment shall be payable to the order of Escrowee (as hereinafter defined). All checks in payment of the balance of the Purchase Price shall be payable to the order of Seller (or as Seller otherwise directs pursuant to subparas. 6(a)(viii) or 18(b))

(c) Except for the Downpayment and checks aggregating not more than one-half of one percent of the Purchase Price, including payment for closing adjustments, all checks delivered by Purchaser shall be certified or official bank checks as hereinabove provided.

4. Closing of Title: The closing documents referred to in para. 6 shall be _or before November 7, 2014_  delivered, and payment of the balance of the Purchase Price shall be made, at the closing of title ("Closing"), to be held on ~~October 15, 2014~~ at 10:A. M., at the offices of C. ROBINSON & ASSOCIATES, LLC, attorneys for the Seller.

5. Representations, Warranties and Covenants: Seller represents, warrants and covenants that:

(a) Seller is the sole owner of the Unit and the property referred to in subpara. 2(a) and Seller has the full right, power and authority to sell, convey and transfer the same;

(b) The common charges (excluding separately billed utility charges) for the Unit on the date hereof are $1610.25 per month; with no additional assessments

(c) Seller has not received any written notice of any intended assessment or increase in common charges not reflected in subpara. 5(b). Purchaser acknowledges that it will not have the right to cancel this Contract in the event of the imposition of any assessment or increase in common charges after the date hereof of which Seller has not heretofore received written notice;

(d) The real estate taxes for the Unit for the fiscal year of July1, 2014 through June 30, 2015 are $21,460.00;

(e) Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;

(f) ~~All refrigerators, freezers, ranges, dishwashers, washing machines, clothes dryers and~~ air conditioning equipment included in this sale will be in working order at the time of Closing;

(g) If a copy is attached to this Contract, the copy of the Certificate of Occupancy covering the Unit is a true and correct copy; and

(h) Seller is not a "foreign person" as defined in para. 17. *(If inapplicable, delete and provide for compliance with Code Withholding Section, as defined in para. 17.)*

6. Closing Documents: (a) At the Closing, Seller shall deliver to Purchaser the following:

(i) Bargain and sale deed with covenant against grantor's acts ("Deed"), complying with RPL § 339-o and containing the covenant required by LL § 13(5), conveying to Purchaser title to the Unit, together with its undivided interest in the Common Elements (as such term is defined in the Declaration and which term shall be deemed to include Seller's right, title and interest in any limited common elements attributable to or used in connection with the Unit) appurtenant thereto, free and clear of all liens and encumbrances other than Permitted Exceptions. The Deed shall be executed and acknowledged by Seller and, if requested by the Condominium, executed and acknowledged by Purchaser, in proper statutory form for recording;

(ii) If a corporation and if required pursuant to BCL § 909, Seller shall deliver to Purchaser (1) a resolution of its board of directors authorizing the delivery

of the Deed and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of BCL § 909. The Deed shall also contain a recital sufficient to establish compliance with such law;

(iii)   A waiver of right of first refusal of the board of managers of the Condominium ("Board") if required in accordance with para. 8;

(iv)   A statement by the Condominium or its managing agent that the common charges and any assessments then due and payable the Condominium have been paid to the date of the Closing;

(v)   All keys to the doors of, and mailbox for, the Unit;

(vi)   Such affidavits and/or other evidence as the title company ("Title Company") from which Purchaser has ordered a title insurance report and which is authorized to do business in New York State shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against Seller and persons or entities whose names are the same as or are similar to Seller's name;

(vii)   New York City Real Property Transfer Tax Return, if applicable, and New York State Real Estate Transfer Tax Return, prepared, executed and acknowledged by Seller in proper form for submission;

(viii)   Checks in payment of all applicable real property transfer taxes except a transfer tax which by law is primarily imposed on the purchaser ("Purchaser Transfer Tax") due in connection with the sale. In lieu of delivery of such checks, Seller shall have the right, upon reasonable prior notice to Purchaser, to cause Purchaser to deliver said checks at the Closing and to credit the amount thereof against the balance of the Purchase Price. Seller shall pay the additional transfer taxes, if any, payable after the Closing by reason of the conveyance of the Unit, which obligation shall survive the Closing;

(ix)   Certification that Seller is not a foreign person pursuant to para. 17 or a withholding certificate from the Internal Revenue Service. *(If inapplicable, delete and provide for compliance with Code Section, as defined in para. 17.)*; and

(x)   Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law §378(5).

(b)   At the Closing, Purchaser shall deliver to Seller the following:

(i)   Checks in payment of (y) the balance of the Purchase Price in accordance with subpara. 3(b) and (z) any Purchaser Transfer Tax;

(ii)  If required by the Declaration or By-Laws, power of attorney to the Board, prepared by Seller, in the form required by the Condominium. The power of attorney shall be executed and acknowledged by Purchaser and, after being recorded, shall be sent to the Condominium;

(iii)  New York City Real Property Transfer Tax Return executed and acknowledged by Purchaser and an Affidavit in Lieu of Registration pursuant to New York Multiple Dwelling Law, each in proper form for submission, if applicable; and

(iv)  If required, New York State Equalization Return executed and acknowledged by Purchaser in proper form for submission.

(c)  It is a condition of Purchaser's obligation to close title hereunder that:

(i)  Any written notice to Seller from the Condominium (or its duly authorized representative) that the Unit is in violation of the Declaration, By-Laws or rules and regulations of the Condominium shall have been cured; and

(ii)  The Condominium is a valid condominium created pursuant to RPL Art. 9-B and the Title Company will so insure.

(d)  It is not a condition of Purchaser's obligation to close title hereunder that any notes or notices of violations of law or governmental orders, ordinances or requirements affecting the Unit and noted or issued by any governmental department, agency or bureau having jurisdiction which were noted or issued on or prior to the date hereof shall be cured by Seller.

7.  **Closing Adjustments:** (a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i)  Real estate taxes and water charges and sewer rents, if separately assessed, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements;

(ii)  Common charges of the Condominium; and

(iii)  If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

-- 5 --

(b) If at the time of Closing the Unit is affected by an assessment which is or may become payable in installments, then, for the purposes of this Contract, only the unpaid installments which are then due shall be considered due and are to be paid by Seller at the Closing. All subsequent installments at the time of Closing shall be the obligation of Purchaser.

(c) Any errors or omissions in computing closing adjustments shall be corrected. This subpara. 7(c) shall survive the Closing.

(d) If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.

8.  Right of First Refusal: If so provided in the Declaration or By-Laws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the Unit held by the Condominium and exercisable by the Board. Seller agrees to give notice promptly to the Board of the contemplated sale of the Unit to Purchaser, which notice shall be given in accordance with the terms of the Declaration and By-Laws, and Purchaser agrees to provide promptly all applications, information and references reasonably requested by the Board. If the Board shall exercise such right of first refusal, Seller shall promptly refund to Purchaser the Downpayment (which term, for all purposes of this Contract, shall be deemed to include interest, if any, earned thereon) and upon the making of such refund this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. If the Board shall fail to exercise such right of first refusal within the time and in the manner provided for in the Declaration or By-Laws or shall declare in writing its intention not to exercise such right of first refusal (a copy of which writing shall be delivered to Purchaser promptly following receipt thereof), the parties hereto shall proceed with this sale in accordance with the provisions of this Contract.

9.  Processing Fee: Seller shall, at the Closing, pay all fees and charges payable to the Condominium (and/or its managing agent) in connection with this sale, including, without limitation, any processing fee, the legal fees, if any, of the Condominium's attorney in connection with this sale and, unless otherwise agreed to by Seller and Purchaser in writing, all "flip taxes," transfer or entrance fees or similar charges, if any, payable to or for the Condominium or otherwise for the benefit of the Condominium unit owners, which arise by reason of this sale.

10. No Other Representations: Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium, or has waived the examination thereof. Purchaser has inspected the Unit, its fixtures, appliances and equipment and the personal property, if any, included in this sale, as well as the Common Elements of the Condominium, and knows the condition thereof and, subject to subpara.

-6-

5(f), agrees to accept the same "as is," i.e., in the condition they are in on the date hereof, subject to normal use, wear and tear between the date hereof and the Closing. Purchaser has examined or waived examination of the last audited financial statements of the Condominium, and has considered or waived consideration of all other matters pertaining to this Contract and to the purchase to be made hereunder, and does not rely on any representations made by any broker or by Seller or anyone acting or purporting to act on behalf of Seller as to any matters which might influence or affect the decision to execute this Contract or to buy the Unit, or said personal property, except those representations and warranties which are specifically set forth in this Contract.

11. **Possession:** Seller shall, prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this sale, shall repair any damage caused by such removal, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession.

12. **Access:** Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Unit between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise). Further, Purchaser shall have the right to inspect the Unit at a reasonable time during the 24-hour period immediately preceding the Closing.

13. **Defaults and Remedies:** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

14. **Notices:** Any notice, request or other communication ("Notice") given or made hereunder (except for the notice required by para. 12), shall be in writing and either (a) sent by any of the parties hereto or their respective attorneys, by registered or certified mail, return receipt requested, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, to the address given at the beginning of this Contract for the party to whom the Notice is to be given, or to such other address for such party as said party shall hereafter designate by Notice given to the other party pursuant to this para. 14, or (c) with respect to para. 6(a)(viii) or para. 18(b), sent by fax to the party's attorney. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same and each Notice delivered in person or by overnight courier shall be deemed given when delivered. A copy of each notice sent to a party shall also be sent to the party's attorney. Each notice sent by fax shall be deemed given when

-7-

transmission is confirmed by the sender's fax machine. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

15. **Purchaser's Lien:** The Downpayment and all other sums paid on account of this Contract and the reasonable expenses of the examination of title to, and departmental violation searches in respect of, the Unit are hereby made a lien upon the Unit, but such lien shall not continue after default by Purchaser hereunder.

16. **Downpayment in Escrow:** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at the depository identified at the end of this Contract until Closing or sooner termination of this Contract and shall pay over or apply the Downpayment in accordance with the terms of this para. 16. Escrowee shall hold the Downpayment in a(n) non-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 14) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this Contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in the county in which the Unit is located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this para. 16, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

-8-

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this para. 16 by signing in the place indicated in this Contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

17. **FIRPTA:** Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC § 1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing Seller shall deliver to Purchaser a certificate stating that Seller is not a foreign person in the form then required by the Code Withholding Section or a withholding certificate from the Internal Revenue Service. In the event Seller fails to deliver the aforesaid certificate or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certificate, Purchaser shall deduct and withhold from the Purchase Price a sum equal to 10% thereof and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

18. **Title Report; Acceptable Title:** (a) Purchaser shall, promptly after the date hereof, or after receipt of the mortgage commitment letter, if applicable, order a title insurance report from the Title Company. Promptly after receipt of the title report and thereafter of any continuations thereof and supplements thereto, Purchaser shall forward a copy of each such report, continuation or supplement to the attorney for Seller. Purchaser shall further notify Seller's attorney of any other objections to title not reflected in such title report of which Purchaser becomes aware following the delivery of such report, reasonably promptly after becoming aware of such objections.

(b) Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the date of Closing, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser at the Closing official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and

Instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and other wise complying with subpara. 3(b). If the Title Company is willing to insure Purchaser that such charges, liens and encumbrances will not be collected out of or enforced against the Unit and is willing to insure the lien of Purchaser's Institutional Lender (as hereinafter defined) free and clear of any such charges, liens and encumbrances, then Seller shall have the right in lieu of payment and discharge to deposit with the Title Company such funds or to give such assurances or to pay such special or additional premiums as the Title Company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the Title Company has agreed so to insure shall not be considered objections to title.

(c) Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the Permitted Exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit and (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

(d) Notwithstanding any contrary provisions in this Contract, express or implied, or any contrary rule of law or custom, if Seller shall be unable to convey the Unit in accordance with this Contract (provided that Seller shall release, discharge or otherwise cure at or prior to Closing any matter created by Seller after the date hereof and any existing mortgage, unless this sale is subject to it) and if Purchaser elects not to complete this transaction without abatement of the Purchase Price, the sole obligation and liability of Seller shall be to refund the Downpayment to Purchaser, together with the reasonable cost of the examination of title to, and departmental violation searches in respect of, the Unit, and upon the making of such refund and payment, this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract. However, nothing contained in this subpara. 18(d) shall be construed to relieve Seller from liability due to a willful default.

19. Risk of Loss; Casualty: (a) The risk of loss or damage to the Unit or the personal property included in this sale, by fire or other casualty, until the earlier of the Closing or possession of the Unit by Purchaser, is assumed by Seller, but without any obligation of Seller to repair or replace any such loss or damage unless Seller elects to do so as hereinafter provided. Seller shall notify Purchaser of the occurrence of any such

- 10 -

loss or damage to the Unit or the personal property included in this sale within 10 days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller elects to make such repairs and restorations, Seller's notice shall set forth an adjourned date for the Closing, which shall be not more than 60 days after the date of the giving of Seller's notice. If Seller either does not elect to do so or, having elected to make such repairs and restorations, fails to complete the same on or before said adjourned date for the Closing, Purchaser shall have the following options:

(i)    To declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment in which event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract; or

(ii)    To complete the purchase in accordance with this Contract without reduction in the Purchase Price, except as provided in the next sentence. If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds; and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are attributable to the loss of or damage to any property included in this sale.

(b) If Seller does not elect to make such repairs and restorations, Purchaser may exercise the resulting option under (i) or (ii) of (a) above only by notice given to Seller within 10 days after receipt of Seller's notice. If Seller elects to make such repairs and restorations and fails to complete the same on or before the adjourned closing date, Purchaser may exercise either of the resulting options within 10 days after the adjourned closing date.

(c) In the event of any loss of or damage to the Common Elements which materially and adversely affects access to or use of the Unit, arising after the date of this Contract but prior to the Closing, Seller shall notify Purchaser of the occurrence thereof within 10 days after such occurrence or by the date of Closing, whichever occurs first, in which event Purchaser shall have the following options:

(i)    To complete the purchase in accordance with this Contract without reduction in the Purchase Price; or

(ii)    To adjourn the Closing until the first to occur of (1) completion of the repair and restoration of the loss or damage to the point that there is no longer a materially adverse effect on the access to or use of the Unit or (2) the 60th day

- 11 -

after the date of the giving of Seller's aforesaid notice. In the event Purchaser elects to adjourn the Closing as aforesaid and such loss or damage is not so repaired and restored within 60 days after the date of the giving of Seller's aforesaid notice, then Purchaser shall have the right either to (x) complete the purchase in accordance with this Contract without reduction in the Purchase Price or (y) declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment, in which latter event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract.

(d) In the event of any loss of or damage to the Common Elements which does not materially and adversely affect access to or use of the Unit, Purchaser shall accept title to the Unit in accordance with this Contract without abatement of the Purchase Price.

20. Internal Revenue Service Reporting Requirement: Each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRC § 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions. The provisions of this para. 20 shall survive the Closing. The parties designate C. ROBINSON & ASSOCIATES, LLC as the attorney responsible for reporting this information as required by law.

21. Broker: Seller and Purchaser represent and warrant to each other that the only real estate broker with whom they have dealt in connection with this Contract and the transaction set forth herein is Co-Brokers: Geraldine O'Bannon of Douglass Elliman; Yumiko Kajie of Taichi Fudosan and that they know of no other real estate broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission of such real estate broker shall be paid by Seller pursuant to separate agreement. If no real estate broker is specified above, the parties acknowledge that this Contract was brought about by direct negotiation between Seller and Purchaser and each represents to the other that it knows of no real estate broker entitled to a commission in connection with this transaction. Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses (including reasonable attorneys' fees) arising out of the breach on their respective parts of any representation, warranty or agreement contained in this para. 21. The provisions of this para. 21 shall survive the Closing or, if the Closing does not occur, the termination of this Contract.



22. Mortgage Commitment Contingency. (Delete paragraph if inapplicable) (a) The obligation of Purchaser to purchase under this Contract is conditioned upon issuance, on or before _____ days after a fully executed copy of this Contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 14 or subparagraph 22(k) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first



mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $_____ for a term of at least _____ years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 22(e) unless the Commitment Date is extended), Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this Contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 22(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (Delete this subparagraph if inapplicable) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 22(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this Contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 22.

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), Purchaser may cancel this Contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of

 ~~the Institutional Lender(s) to whom application was made and that Purchaser has~~ complied with all its obligations under this paragraph 22.

(f) If this Contract is canceled by Purchaser pursuant to subparagraphs 22(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 21.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 22(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 22.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this Contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all of its obligations under this paragraph 22) and except as set forth in paragraph 21.

(i) The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries under this paragraph 22.

(j) For purposes of this Contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(k) For purposes of subparagraph (a), Purchaser shall be deemed to have been given a fully executed copy of this Contract on the third business day following the ~~date of ordinary or regular mailing, postage prepaid.~~

23. **Gender, Etc.:** As used in this Contract, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require.

- 14 -

24. **Entire Contract:** All prior understandings and agreements between Seller and Purchaser are merged in this Contract and this Contract supersedes any and all understandings and agreements between the parties and constitutes the entire agreement between them with respect to the subject matter hereof.

25. **Captions:** The captions in this Contract are for convenience and reference only and in no way define, limit or describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

26. **No Assignment by Purchaser:** Purchaser may not assign this Contract or any of Purchaser's rights hereunder.

27. **Successors and Assigns:** Subject to the provisions of para. 26, the provisions of this Contract shall bind and inure to the benefit of both Purchaser and Seller and their respective distributees, executors, administrators, heirs, legal representatives, successors and permitted assigns.

28. **No Oral Changes:** This Contract cannot be changed or terminated orally. Any changes or additional provisions must be set forth in a rider attached hereto or in a separate written agreement signed by both parties to this Contract.

29. **Contract Not Binding Until Signed:** This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

30. **Lead-Based Paint:** If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Contract on the day and year first above written.

PRESTON TAYLOR PROJECTS, LLC

BY: _____          BY: _____
W. Charles Robinson, Seller                Tom Shimura, Purchaser
(EIN: 14-XXX3833)                          (SS#: @ Closing )
                                            Tomohiko

_____
Agreed to as to para. 16:  G. ROBINSON & ASSOCIATES, LLC
                                  Escrowee

Escrow Depository:  TD Bank

Address: 43rd Street and Third Avenue, New York, N.Y.

- 15 -

SUPPLEMENTAL RIDER FOR CONDOMINIUMS

SELLER:                 PRESTON TAYLOR PROJECTS, LLC

PURCHASER:              TOMOHIKO SHIMURA

PREMISES:               820 SECOND AVENUE, UNIT 7B,
                        NEW YORK, NEW YORK  10017

DATED:                  OCTOBER 24, 2014

1.    *Supplemental Rider Controls.* In the event of any inconsistency or conflict between the
      terms and provisions of the printed form Contract of Sale, the Rider and this
      Supplemental Rider (collectively referred to as the "Contract"), the terms and provisions
      of this Supplemental Rider shall govern and be binding. The cross references in this
      Supplemental Rider to paragraphs in the printed form Contract of Sale are for
      convenience only and shall not limit the application of the provisions of this
      Supplemental Rider.

2.    *Assignment.* Notwithstanding the language in the Contract, it is understood and agreed
      between the parties that the Purchaser, without the prior written consent of the Seller,
      may assign the Contract to an entity in which Tomohiko Shimura has an ownership
      interest and is a managing principal.

3.    *Tax Proceedings.* Seller represents that there is currently no real estate tax abatement or
      exemption affecting the Premises. Seller represents that there are no pending proceedings
      or appeals to correct or reduce the assessed valuation of the Premises.

4.    *Personalty, Furnishings.* Except for movable personal property, including office
      furniture and equipment, Seller shall not remove any personal property affixed to or
      appurtenant to the Unit or otherwise included in section 2(i) of the Contract. All window
      treatments, including office blinds and related supports and hardware, shall remain with
      the Unit and shall be transferred to Purchaser at Closing.

5.    *Maintenance, Assessments.* Seller will immediately deliver a notice to Purchaser
      indicating: (1) Any increase in the amount of the monthly common charges as set forth in
      Paragraph 5(b); (2) Any intended or proposed assessment other than any assessment set
      forth in Paragraph 5(c), if any; (3) Any proposed amendment or modification of the
      Condominium's by-laws thereof.

6.    *Seller Alterations.* Seller hereby represents that no additions or alterations to the Unit
      have been made without necessary building permits, and all such permits have been
      properly completed with the appropriate "sign-offs" issued in connection therewith
      meeting all requirements of the applicable municipality. Seller further represents that
      Seller has paid all Condominium alteration and improvement fees as and when due from
      Seller. Upon request of Purchaser, Seller shall provide Purchase with all plans, approvals
      and paid invoices in connection with the alterations and improvement to the Unit
      performed by or on behalf of Seller.

7.   *Counterparts, Scanned Signatures.* This Contract may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute a single instrument. The parties further agree that all signatures to this Contract transmitted by email or facsimile shall be considered as an original signature and shall have the full force and effect as if the signature was an original.

8.   *No Material Problems.* Seller represents that he has no actual notice, nor has he been notified during the prior twelve month period immediately preceding the date of this Contract, of any material problems which affect the condition of the Unit, including but not limited to, excessive noise or issues tantamount to the creation of a nuisance and that Seller is not in violation of the Declaration of Condominium, House Rules or By-Laws of the Condominium.

9.   *Condition of Unit.* Seller represents and warrants the equipment, appliances, and fixtures are or will be in good and working order at Closing. Seller represents and warrants that he will install or replace any equipment or appliances in the Unit or otherwise make any repairs, improvements in the event said equipment, structures and fixtures that are not in good condition and working order in the Unit. Seller also warrants and represents, to the extent within Seller's control and Seller's responsibility and not the Condominium, the plumbing, electrical, air conditioning, and heating systems in the Unit and same shall be delivered in good and working order condition at Closing.

10.   *Hidden Defects.* Seller represents and warrants that there is no damage (other than reasonable wear and tear) to any part of the Unit which is covered, hidden, concealed or which it was impracticable for Purchaser to view or inspect prior to date hereof. In the event such damage is revealed prior to Closing, Seller agrees to repair same prior to Closing or establish a reasonable allowance or credit to Purchaser at Closing or a reasonable escrow to cover the cost or necessary repair or replacements. Seller represents and warrants the flooring will be delivered at the time of Closing free of defects.

11.   *No leaks.* Seller represents and warrants that for the past twenty-four months there have been no leaks, floods or water seepage emanating from or into the apartment. This paragraph shall survive Closing.

12.   *Right of Entry.* Upon reasonable oral notice to Seller, Seller's representative or the Broker, prior to Closing, Seller shall permit Purchaser and Purchaser's decorators, contractors and architects to inspect the Unit from time to time for the purposes of taking measurements and obtaining estimates.

13.   *Survival.* Notwithstanding the language in the Contract, all representations of Seller in the Contract shall survive for a period of one (1) year after the Closing.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto duly execute the Supplemental Rider to Contract of Sale on the date and year first written above.


PRESTON TAYLOR PROJECTS, LLC

BY: _____          _____

W. Charles Robinson                             TOMOHIKO SHIMURA

## SCHEDULE A – Permitted Exceptions

1. Zoning laws and regulations and landmark, historic or wetlands designation which are not violated by the Unit and which are not violated by the Common Elements to the extent that access to or use of the Unit would be materially and adversely affected.

2. Consents for the erection of any structure or structures on, under or above any street or streets on which the Building may abut.

3. The terms, burdens, covenants, restrictions, conditions, easements and rules and regulations set forth in the Declaration, By-Laws and rules and regulations of the Condominium, the Power of Attorney from Purchaser to the board of managers of the Condominium and the floor plans of the Condominium, all as may be amended from time to time.

4. Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Building and Common Elements, provided that none of such rights imposes any monetary obligation on the owner of the Unit or materially interferes with the use of or access to the Unit.

5. Encroachments of stoops, areas, cellar steps, trim, cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Building over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Common Elements.

6. Any state of facts which an accurate survey or personal inspection of the Building, Common Elements or Unit would disclose, provided that such facts do not prevent the use of the Unit for dwelling purposes. For the purposes of this Contract, none of the facts shown on the survey, if any, identified below, shall be deemed to prevent the use of the Unit for dwelling purposes, and Purchaser shall accept title subject thereto.

The survey ~~referred to in No. 6 above was prepared by~~ ~~dated~~ ~~and last revised~~ for applicable building

7. The lien of any unpaid common charge, real estate tax, water charge, sewer rent or vault charge, provided the same are paid or apportioned at the Closing as herein provided.

8. The lien of any unpaid assessments to the extent of installments thereof payable after the Closing.

- 16 -

RIDER ANNEXED TO AND FORMING A PART
OF A CONTRACT OF SALE (the "Contract")

820 Second Avenue, Unit 7B, New York, NY        (the "Unit")

The Diplomat Condominium        (the "Condominium")

PRESTON TAYLOR PROJECTS, LLC        (the "SELLER")

TOM SHIMURA,        (the "PURCHASER")

1)    <u>Rider To Control</u>. In the event of any inconsistency between the provisions of the printed form of this Contract or any handwriting or typing appearing thereon and any other riders attached hereto and this Rider, whether or not such inconsistency is expressly noted in the Contract or this Rider, the provisions of this Rider shall govern and be binding.

2)    <u>Balance of the Purchase Price</u>. Supplementing Paragraph 3(a) (ii) in the Contract, the balance of the Purchase Price shall be paid by an official bank check or certified check drawn from a New York State Clearinghouse Bank.    *but in working order*

3)    <u>Condition of Unit</u>. The items listed in Paragraph 2(i) are included in this transaction, to the extent that they currently exist in the Unit and are being delivered in "as is" condition. Supplementing paragraph 10, Purchaser is purchasing the Unit and personal property included in this sale "as is" and is fully informed to the condition of the Unit and personal property. Markings on walls and holes from picture hooks and other personalty shall not be considered damage to the Unit and Seller shall not be responsible for patching and repairing same. This Contract, as written, contains all the terms of the agreement entered into between the parties, and Purchaser acknowledges that neither Seller nor anyone purporting to act on his behalf has made any representations, or held out any inducements to Purchaser, other than those herein expressed, including, but not limited to the representations, warranties and covenants in Paragraph 5 of the printed portion of this Contract, and Seller is not liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations, or information pertaining to the Unit as to the physical condition, income, expense, operation, or to what use the Unit can be applied, including but not limited to any matter or thing affecting or relating to the Unit except as herein specifically set forth herein including, but not limited to the representations, warranties, and covenants in Paragraph 5 of the printed portion of this Contract. Seller is not liable or bound in any manner by any verbal or written statements, representations, real estate broker's set-ups, or information pertaining to the Unit furnished by any real estate broker, agent, employee, servant, or other person, unless the same are specifically set forth herein, including, but not limited to the representations, warranties, and covenants in Paragraph 5 of the printed portion of this Contract.

4)  Notices.  All notices, demands and requests (herein collectively called "notices"), which are required or desired to be given by either party to the other hereunder shall be in writing and sent by (a) United States registered or certified mail, return receipt requested, postage prepaid, (b) personally delivered with hand receipt, or (c) Federal Express or other overnight delivery service which provides for receipts, in either event addressed to the intended party at its address as indicated above.  Copies of notices shall be sent first class mail or telecopier to counsel to the parties as indicated below:

If to Purchaser:

· Paul J. Petras, Esq.
60 Hillside Avenue
Manhasset, NY 11030
Attn:
Telephone: (516) 869-8866
Telecopier: (516) 869-8001
paul@petraslaw.com

If to Seller:

C. ROBINSON & ASSOCIATES, LLC
820 Second Avenue – Suite 7C
New York, NY 10017
Attn: W. Charles Robinson, Esq.
Telephone: (212) 286-0423
Telecopier: (212) 286-0450
wcr@crobinsonllc.com

Any notice given in accordance with this section by counsel to a party hereto shall be deemed notice given by such party.  Each notice mailed shall be deemed delivered on the day of receipt. Each notice delivered personally, Federal Express or other overnight delivery service shall be deemed given upon receipt thereof.  Failure of the parties attorneys and Escrow Agent to acknowledge receipt of delivery shall nevertheless constitute valid delivery for purposes of this Section.

5)  Full Compliance.  Upon the delivery and acceptance of the deed at the closing of title, Seller shall be deemed to have fully complied with and fulfilled all of the terms, conditions, covenants, warranties and representations of this Contract on his part to be performed or represented by him to be true, except for the terms specifically stated in the Contract which are to survive Closing and only for the time periods specified in the Contract for which they survive Closing.

6)  Title.  (a)  Purchaser shall promptly order an examination of title to the Unit and shall deliver a copy of the title report upon receipt of same to the attorneys for the Seller at least sixty (60) days prior to the Closing Date as outlined in Paragraph 18 in the Contract.

(b)  If Seller shall be unable to convey the Unit or title hereto in accordance with the terms of this Contract, then notwithstanding any other provisions of this Contract to the contrary, whether expressed or implied, the sole obligation and liability of Seller shall be to refund to Purchaser the Downpayment paid on the signing of this Contract and to reimburse the Purchaser for the cost of title examination, as defined herein, actually paid by Purchaser, if any.  Upon the making of such refund and reimbursement, this Contract and any lien of Purchaser against the Unit shall terminate, be null and void and of no further force or effect, and neither party shall have any further claim against the other by reason of this Contract.  Seller may, however, but shall not be required to, take any measures, of any kind, or bring any action or proceeding, or

*unless same can be accomplished for under $25,000 expended by Seller* JSM/W

incur any expense, in order to convey title pursuant to the terms and representations of this Contract and Seller shall be entitled to one or more reasonable adjournments of the Closing to attempt to convey the Unit and title thereto in accordance herewith. In the event Seller has not agreed to remove or remedy any Defects, Purchaser may, nevertheless, accept such title as Seller may be able to convey, without reduction of, or any credit or allowance against, the Purchase Price and without any liability on the part of Seller. Notwithstanding the foregoing, Seller shall be obligated to remove all mortgages on the property which have been taken by Seller.

(o) The term "cost of title examination" is defined, for the purpose of this Contract, as the expense actually incurred by Purchaser for title examination, municipal and departmental searches, if any, and in no event exceeding $450.00 in the aggregate.

*$10,000⁰⁰* JSM/W

7) Violations. Notwithstanding anything to the contrary set forth in the Contract or Schedule A of this Contract, in the event there should appear any violations of record against the Unit to be removed by Seller which violations are estimated to cost, in the aggregate, more than $1,000.00, the sole obligation and liability of Seller shall be to terminate this Contract and return to Purchaser the Downpayment. Upon such repayment, this Contract shall be deemed cancelled, null and void, and of no further force or effect, and neither of the parties hereto shall be under any further obligation to the other by virtue of this contract. The Seller, may, however, but shall not be required to, take any measures of any kind or bring any action of proceeding or incur any expense, in order to remove or correct any violation which in the aggregate are estimated to cost $1,000.00 and Seller shall be entitled to one or more adjournments of the closing, not to exceed expiration of Purchaser's commitment interest rate lock-in, to convey the Unit free of any violations. In the event Seller does not elect to take any action to remove the violations, Purchaser may nevertheless, at her sole option and discretion, accept title to the Unit subject to such violations in the event that the violations exceed $1,000.00 without a cash abatement in the Purchase Price.

*$10,000⁰⁰* JSM/W

8) Personal Property. The parties hereto agree that any personal property transferred herewith is appurtenant to the Unit, has no value apart there from and no part of the Purchase Price shall be deemed to have been paid by Purchaser on account thereof.

9) Closing Documents. Supplementing Paragraph 6, at the Closing, Seller and Purchaser agree to execute the following documents:

    (xi)    (If in NYC) an affidavit of compliance of smoke alarm installation in the Unit in accordance with Section 378, subdivision 5 of the Executive Law; and

    (xii)   New York State Form TP-584, Real Estate Transfer Tax Return and Credit Line Mortgage Certificate.

10) Approval of Sale. Purchaser shall, if required, make application to the Condominium (together with all of the required fees) in connection with the sale of the Unit within five (5) business days from the date hereof.

11) Common Charges/Real Estate Taxes. The sums outlined in Paragraph 5 of the Contract

are approximations and Purchaser will complete their due diligence in determining their accuracy. Seller makes no representation that the sums Paragraph 5 will not change after the date hereof, but Seller will notify Purchaser of any proposed increase which becomes known to Seller

12)    New York Law. This Contract shall be interpreted and enforced in accordance with, and governed by, New York law. If any provision of this Contract shall be unenforceable or invalid, the same shall not affect the remaining provisions of this Contract, and to this end the provisions of this Contract are intended to be and shall be severable.

13)    Fees. Notwithstanding anything to the contrary contained herein, specifically Paragraph 9, Purchaser and Seller agree to pay the fees at Closing which are specifically imposed upon Purchaser and Seller by the Condominium and/or its Managing Agent.

14)    1031 Transaction. Buyer hereby acknowledges that it is the intent of the Seller to structure its sale as a tax deferred exchange under IRC §1031. Seller covenants that this will not delay the close of the subject transaction nor cause the Buyer any additional expenses. The Seller's rights under the purchase and sale agreement may be assigned to Legal 1031 Exchange Services, Inc., a Qualified Intermediary for IRC §1031 Tax Deferred Exchanges. Buyer agrees to cooperate with the Seller and the Qualified Intermediary to complete the exchange.

PRESTON TAYLOR PROJECTS, LLC

BY: _____        BY: _____
W. Charles Robinson, Seller              Tem Shimora, Purchaser
(EIN: XX-XXXXXXX)                        (SS#: @ Closing        )
                                          Tomohiko

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE A DESCRIPTION

Title No.: 3105-00304

The Condominium Unit (in the Building located at and known as and by Street Number 814-822 Second Avenue, New York, New York), designated and described as Unit 7B (hereinafter called the "Unit") in the Declaration (hereinafter called "Declaration") made by the Sponsor under the Condominium Act of The State of New York (Article 9-B of the Real Property Law of the State of New York), dated 2/7/1996 and recorded 5/9/1996 in the Office of the Register The City of New York, County of New York, in Reel 2321 Page 1717 establishing a plan for Condominium ownership of said Building and the land upon which the same is erected (hereinafter sometimes collectively called the "Property") and also designated and described as Tax Lot No. 1109 Manhattan on the Tax Map of the Real property assessment department of the City of New York and on the floor plans of said Building certified by Michael Lynn on 5/9/1996 and filed as Condominium Plan No. 935 on 5/9/1996 in the aforesaid Register's Office.

The land upon which the Building containing the Unit is erected as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Second Avenue with the southerly side of 44th Street;

THENCE  easterly along the southerly side of 44th Street, 82 feet;

THENCE southerly parallel with the easterly side of Second Avenue, 50 feet 5 inches;

THENCE easterly parallel with the southerly side of 44th Street, 18 feet;

THENCE southerly parallel with the easterly side of Second Avenue, 50 feet;

THENCE westerly parallel with  the southerly side of 44th Street, 100 feet to the easterly side of Second Avenue;

THENCE northerly along the easterly side of Second Avenue, 100 feet 5 inches to the corner, the point or place of BEGINNING.

TOGETHER with an undivided 1.2861 percent interest in the common elements of the property as described in the Declaration (hereinafter called the "Common Elements") recorded in Reel 2321 Page 1717.



DEPARTMENT OF BUILDINGS

BOROUGH OF MANHATTAN , THE CITY OF NEW YORK

No. 59016

CERTIFICATE OF OCCUPANCY

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will be entered for indexing purposes. In the event of any conflict with the rest of the document.

2003061602280001002E94F4

## RECORDING AND ENDORSEMENT COVER PAGE                    PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2003061602280001 | Document Date: 02-28-2003 | Preparation Date: 01-12-2004 |

Document Type: DEED, OTHER
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| PARAGON ABSTRACT<br>200 CORPORATE PLAZA<br>AS AGENT FOR LAWYERS TITLE 36447LT<br>ISLANDIA, NY 11749<br>631-234-1100 | RICK, STEINER, FELL & BENOWITZ, PC.<br>THREE NEW YORK PLAZA<br>ATTN: JACOB STEINER, ESQ.<br>NEW YORK,, NY 10004 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1336 | 1109 | Entire Lot  7B | 820 SECOND AVENUE |

Property Type: COMMERCIAL CONDO UNIT(S)

### CROSS REFERENCE DATA

CRFN_____ or Document ID _____ or _____ Year ____ Reel ____ Page ____ or File Number_____

### PARTIES

| GRANTOR: | GRANTEE: |
|---|---|
| W. CHARLES ROBINSON<br>820 SECOND AVENUE, SUITE 7B<br>NEW YORK, NY 10017 | PRESTON TAYLOR PROJECTS, LLC<br>820 SECOND AVENUE, SUITE 7B<br>NEW YORK, NY 10017 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 25.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE |
| MTA: | $ | 0.00 | CITY OF NEW YORK |
| NYCTA: | $ | 0.00 | Recorded/Filed          01-09-2004 12:42 |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): |
| | | | 2004000215064 |

NYC HPD Affidavit In Lieu of Registration Statement

*Rochelle Patras*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

|||||||||||||||||||||||||

2003061602280001002E94F4

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

Document ID: 2003061602280001     Document Date: 02-28-2003     Preparation Date: 01-12-2004
Document Type: DEED, OTHER
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| PARAGON ABSTRACT | RICK, STEINER, FELL & BENOWITZ, PC. |
| 200 CORPORATE PLAZA | THREE NEW YORK PLAZA |
| AS AGENT FOR LAWYERS TITLE 36447LT | ATTN: JACOB STEINER, ESQ. |
| ISLANDIA, NY 11749 | NEW YORK,, NY J0004 |
| 631-234-1100 | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1336 | 1109 Entire Lot | 7B | 820 SECOND AVENUE |

Property Type: COMMERCIAL CONDO UNIT(S)

**CROSS REFERENCE DATA**

CRFN_____ or Document ID._____ or _____ Year_____ Reel_____ Page_____ or File Number._____

**PARTIES**

| GRANTOR: | GRANTEE: |
|---|---|
| W. CHARLES ROBINSON | PRESTON TAYLOR PROJECTS, LLC |
| 820 SECOND AVENUE, SUITE 7B | 820 SECOND AVENUE, SUITE 7B |
| NEW YORK, NY 10017 | NEW YORK, NY 10017 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 25.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

NYC HPD Affidavit In Lieu of Registration Statement

Together with, and subject to, the rights, obligations, easements, restrictions and other provisions set forth in the Declaration and the By-Laws, all of which shall constitute covenants running with the land and shall bind any person having at any time any interest or estate in the Unit, as though recited and stipulated at length herein;

Subject to the following:

1. Grantee and it successors shall execute the Power of Attorney described in Article 15 of the Declaration.

2. Such other liens, agreements, covenants, easements, restrictions and other matters of record as pertain to the Unit and/or to the Premises as more particularly described in Schedule B attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto Grantee, and the heirs or successors and assigns of Grantee, forever.

Except as otherwise specifically permitted or provided in the Declaration or the By-Laws, the Unit may be used for any lawful, nonhazardous, commercial purpose, other than (i) any use which produces noise audible outside the Unit or odors permeating outside the Unit, (ii) manufacturing, (iii) any residential, sleeping or hotel purpose, or (iv) any pornographic purpose or as a massage parlor, adult book store, peep show or adult entertainment facility.

Grantor covenants that Grantor has not done or suffered anything whereby the Unit has been encumbered in any way whatever, except as mentioned above.

Grantor, in compliance with Section 13 of the Lien Law of the State of New York, covenants that Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the same for any other purposes.

Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all the terms and provisions thereof. The term 'Grantee" shall be read as "Grantees" whenever the sense of this indenture so requires.

This conveyance is made in the regular course of business

actually conducted by Grantor.

IN WITNESS THEREOF, Grantor and Grantee have duly executed
this Indenture as of the day and year First above written.

W. CHARLES ROBINSON

Grantor

PRESTON TAYLOR PROJECTS, LLC

BY
W. Charles Robinson, Grantee

Todd G. Schwartz

Todd G. Schwartz
Notary Public, City of New York
No. 02SC6059321
Qualified in Suffolk County
Commission Expires May 29, 2006

Comm Exp May 28, 2006

State of NY
County of Suffolk
On the 23 May, 2003 before me The undersigned personally
appeared W. Charles Robinson personally known to me or proved to me
on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he
executed the same in his capacity, and that by his signature on the
instrument, the individual or the person upon behalf of which the
individual acted, executed the instrument.

Todd C Schwartz
Notary Public, State of NY
No 02SC6059331 County
Qualified in Suffolk County
Comm Exp May 29, 2006

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2003061602280001002B5A75

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2003061602280001 | Document Date: 02-28-2003 | Preparation Date: 01-12-2004 |
| Document Type: DEEDO | | |

| SUPPORTING DOCUMENTS SUBMITTED: | Page Count |
|---|---|
| RP-5217 REAL PROPERTY TRANSFER REPORT | 1 |

RIDER REGARDING RIGHT OF FIRST REFUSAL ANNEXED TO AND FORMING
A PART
OF A CONTRACT OF SALE (the "Contract")

820 Second Avenue, Unit 7B, New York, NY          (the "Unit")

The Diplomat Condominium                          (the "Condominium")

PRESTON TAYLOR PROJECTS, LLC                       (the "SELLER")

TOM SHIMURA,                                       (the "PURCHASER")

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS FOR THE PARTIES
HEREUNDER ARE HEREBY MADE EXPRESSLY SUBJECT TO THE RIGHT OF
THE BOARD OF THE DIPLOMAT CENTRE CONDOMINIUM WITH RESPECT TO
THE TRANSACTION EMBODIED HEREIN PURSUANT TO THE TERMS OF THE
PLAN, THE DECLARATION AND THE BY-LAWS OF THE SAID
CONDOMINIUM, AS THE SAME MAY HAVE BEEN AMENDED.

PRESTON TAYLOR PROJECTS, LLC

BY: _____          BY: _____
W. Charles Robinson, Seller              Tom Shimura, Purchaser
(BIN: XX-XXXXXXX)                        (SS#:_____)

## RIDER REGARDING RIGHT OF FIRST REFUSAL ANNEXED TO AND FORMING
## A PART
## OF A CONTRACT OF SALE (the "Contract")

| | |
|---|---|
| 820 Second Avenue, Unit 7B, New York, NY | (the "Unit") |
| The Diplomat Condominium | (the "Condominium") |
| PRESTON TAYLOR PROJECTS, LLC | (the "SELLER") |
| TOM SHIMURA, | (the "PURCHASER") |

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS FOR THE PARTIES HEREUNDER ARE HEREBY MADE EXPRESSLY SUBJECT TO THE RIGHT OF THE BOARD OF THE DIPLOMAT CENTRE CONDOMINIUM WITH RESPECT TO THE TRANSACTION EMBODIED HEREIN PURSUANT TO THE TERMS OF THE PLAN, THE DECLARATION AND THE BY-LAWS OF THE SAID CONDOMINIUM, AS THE SAME MAY HAVE BEEN AMENDED.

PRESTON TAYLOR PROJECTS, LLC

BY: _____          BY: _____
W. Charles Robinson, Seller             Tom Shimura, Purchaser
(EIN: XXXXXX383)                         (SS#:_____)